IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT<br>LLOYDS, LONDON, | | |
|         Plaintiff, | | No. CIV. S-10-116 MCE DAD |
|    v. | | |
| TRIDUANUM FINANCIAL, INC.,<br>JOHNNY E. GRIVETTE, J.R.,<br>CHRISTOPHER JARED WARREN,<br>and SCOTT EDWARD CAVELL, | | <u>FINDINGS AND RECOMMENDATIONS</u> |
|         Defendants. | | |

This matter came before the court on June 10, 2011, for hearing on plaintiff Certain Underwriters at Lloyds, London's ("plaintiff") motion for default judgment (Doc. No. 47). Ted Smith, Esq. appeared for plaintiff. No appearance was made by or on behalf of defendants Triduanum Financial, Inc. ("Triduanum") and Scott Edward Cavell ("Cavell") (sometimes collectively, "defendants").

After considering plaintiff's argument and all written materials submitted in connection with plaintiff's motion and for the reasons set forth below, the undersigned recommends that the motion be granted and that default judgment be entered against defendants.

/////

## PROCEDURAL BACKGROUND

Plaintiff initiated this diversity action by filing its complaint on January 15, 2010 against Triduanum, Cavell and two other defendants, Christopher Jared Warren ("Warren") and Johnny E. Grivette, Jr. ("Grivette"). Plaintiff filed its complaint after Triduanum tendered an underlying lawsuit to plaintiff captioned <u>Taylor, Bean & Whitaker Mortgage Corporation v. Triduanum Financial, Inc., Johnny E. Grivette, Jr., Christopher Jared Warren, and Scott Edward Cavell</u>, Case No. 2:09-CV-954 KJM/EFB, filed in this court on April 8, 2009 (the "Underlying Lawsuit"). Plaintiff's complaint seeks rescission of a professional liability policy and fidelity bond and a declaration of no coverage under the policy of insurance. Plaintiff does not seek monetary damages. After being served with the complaint, Warren and Grivette entered stipulations with plaintiff and were dismissed from the case. (Doc. Nos. 37 & 41.) Defendant Triduanum was served via its principal, Warren, at the Nevada County Jail, and defendant Cavell was served via publication in the <u>Sacramento Bee</u>. (Doc. Nos. 7, 16 & 23.) Despite being served, defendants Triduanum and Cavell failed to appear in the action. Pursuant to plaintiff's request, the Clerk of the Court entered default against these defendants on April 6 and May 7, 2010, respectively. (Doc. Nos. 22 & 29.) Plaintiff filed the instant motion for default judgment, noticing it to be heard before the undersigned pursuant to E.D. Cal. L.R. 302(c)(19).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. <u>Dundee Cement Co. v. Howard Pipe & Concrete Prods.</u>, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing <u>Pope v. United States</u>, 323 U.S. 1 (1944); <u>Geddes v. United Fin. Group</u>, 559 F.2d 557 (9th Cir. 1977)); <u>see</u> also <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered

without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion.  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986).  The court is free to consider a variety of factors in exercising its discretion.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

I.   Propriety of Entering Default Judgment

The factual allegations of plaintiff's complaint, taken as true pursuant to the entry of default against defendants, establish the following.  On August 13, 2008, defendant Triduanum submitted an Application for Mortgage Bankers Professional Liability Insurance, Mortgagee's E&O Insurance and a Mortgage Bankers Fidelity Bond (the "Application") to plaintiff.  Warren has admitted that, as Executive Vice President of Triduanum, he signed and submitted the Application to plaintiff.  (Warren Stip., Doc. No. 37 at 2:1-3.)  Although the Application also shows that Grivette, the former President of defendant Triduanum, also signed the Application, Grivette denies that he signed the Application and asserts that his signature is a forgery made without his knowledge or approval.  (Grivette Stip., Doc. No. 41 at 2:7-9.)  Based on answers provided by defendant Triduanum in the Application, plaintiff issued a Mortgage Bankers and Mortgage Brokers Professional Liability Policy, No. MB5913, with a policy period beginning October 1, 2008 and expiring October 1, 2009 ("the Policy").  (Ex. B to Compl (Doc.

1  No. 1).)  Also, based on answers provided by defendant Triduanum in the Application, plaintiff

2  issued a Mortgage Bankers Fidelity Bond under Bond No. MB59514 with a bond period

3  beginning October 1, 2008 and expiring October 1, 2009 ("the Bond").  (Ex. C to Compl. (Doc.

4  No. 1).)  The Application was attached to and made part of both the Policy and the Bond.

5     The Application included the following questions:

6     Question No. 69: "Has the Applicant or its predecessors in
       business or any person proposed to be insured ever been the subject
7      of any claim or lawsuit with regard to the coverage's being applied
       for?"

8
       Question No. 70: "Does any person or entity proposed to be
9      insured have knowledge or information of any act, error or
       omission(s) which might reasonably be expected to give rise to a claim(s), suit(s), investigation(s) or action(s) under a Professional
10     Liability Policy, Mortgagee's E&O Policy and/or Fidelity Bond
       Policy?"

11
       Question No. 75: "Have there been or are there now pending, any
12     claim(s), suit(s) or action(s) (including but not limited to, any
       investigation) against any person or entity proposed for insurance
13     under the proposed coverage forms in connection with mortgage
       lending products, practices or activities?"

14
    In response to the foregoing questions, defendant Triduanum answered "no."

15
       The Policy provided that:  "All the statements and representations in the

16  application are deemed to be material to the risk assumed by the insurer, form the basis of this

17  policy, and are incorporated into and have become a part of this policy."  (Ex. B to Compl. (Doc.

18  No. 1), Policy at ¶ 21.)  Similarly, under the General Agreements of the Bond, Section "C"

19  Representation of Insured stated as follows: "The Insured represents that the information

20  furnished in the application for this bond is complete, true and correct.  Such application

21  constitutes part of this bond.  Any misrepresentation, omission, concealment or incorrect

22  statement of material fact, in the application or otherwise, shall be grounds for the rescission of

23  this bond."  (Ex. C to Compl. (Doc. No. 1).)  Finally, the Application provided that the applicant

24  further agrees that if the information supplied on the Application changes between the date of the

25  /////

26

4

1  Application and the time when the policy/bond is issued, the applicant will immediately notify
2  the company of the change.

3  On August 25, 2008, after the Application was submitted to plaintiff on August
4  13, 2008, but before the inception date of the Policy and Bond on October 1, 2008, Grivette was
5  named as a defendant in a lawsuit entitled Allen C. Daniels v. Lawrence Loomis, et al., No. SCV
6  23522, Superior Court of the State of California, County of Placer.  (Grivette Stip., Doc. No. 41
7  at 2:24-26.)  Defendant Triduanum never disclosed the Daniels lawsuit to plaintiff, even though
8  that information is material and pertinent to Question Nos. 69, 70 and 75 described above.

9  Additionally on September 2, 2008, also after the Application date but before the
10 inception date of the Policy and Bond, Warren was interviewed by Special Agent Christopher S.
11 Fitzpatrick of the Treasury Department, Internal Revenue Service-Criminal Investigation with
12 respect to his involvement with Loomis Wealth Solutions and Nationwide Lending Group.
13 Specifically, Warren was questioned about his knowledge and involvement in alleged
14 mortgage fraud involving himself, defendant Cavell and others. (Warren Stip., Doc. No. 37 at
15 2:22-23; Ex. E to Compl. (Doc. No. 1), Criminal Compl. against Warren).  Defendant Triduanum
16 never disclosed this criminal investigation to plaintiff, even though such information is material
17 and pertinent to Question No. 75 of the Application.  (Kirk Decl. (Doc. No. 48) at ¶ 14.)

18 Within a few weeks after the Policy and Bond were issued to defendant
19 Triduanum, defendant Cavell was interviewed on October 21, 2008 by Agent Fitzpatrick with
20 respect to his knowledge and involvement in alleged mortgage fraud. (Ex. F to Compl. Doc. No.
21 1), Criminal Compl. against Cavell.)

22 Thereafter in February 2009, the U.S. Attorneys Office filed criminal complaints
23 against Warren and defendant Cavell.  On February 2, 2009, defendant Triduanum's website
24 displayed a letter entitled "Restoring International Confidence in American MSB/CMBS/ABS
25 Investment System by Christopher Jared Warren."  (Grivette Stip. (Doc. No. 41) at 3:1-3 and Ex.
26 B.)  In the letter, Warren admits to engaging in mortgage fraud since the age of nineteen,

5

including through the companies of Loomis Wealth Solutions and Nationwide Lending Group, for which Warren and defendant Cavell were the subject of criminal investigation and later criminal charges.

In March 2009, an indictment was filed against Warren and defendant Cavell with respect to defendant Triduanum's business dealings with Taylor Bean & Whitaker Mortgage Corporation. (Ex. G to Compl.)

Weighing the Eitel factors, the undersigned finds that the material allegations of the complaint set forth above support plaintiff's claims. Defendants have had ample notice of plaintiff's intent to pursue judgment against them, yet they continue to fail to respond to the complaint or otherwise appear in the action. There has been no showing that defendants' failure to respond is due to excusable neglect. Under such circumstances, there is no reason to doubt the merits of plaintiff's substantive claims, nor is there any apparent possibility of a dispute concerning the material facts underlying this action. Since plaintiff only seeks rescission and declaratory relief, the amount of money at stake is not at issue. Finally, plaintiff will be prejudiced if default judgment is denied because plaintiff will be forced to continue its defense of defendants in the Underlying Lawsuit. Because each of these factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be granted.

II.   Terms of Judgment to be Entered

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. As indicated above, plaintiff does not seek the award of money damages. Rather, plaintiff seeks only rescission of the Policy issued to defendants and declaratory relief regarding that rescission. Plaintiff is entitled to the requested relief. California Insurance Code §§ 331, 359 and 10380 allow an insurer to rescind an insurance contract when

/////

/////

the insured has concealed or misrepresented material facts.[1]  See Security Life Ins. Co. of America v. Meyling, 146 F.3d 1184, 1187 (9th Cir. 1998).  Materiality is determined subjectively by looking to the effect of the representation on the insurer.  See Cal. Ins. Code § 334 ("Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."); Imperial Casualty & Indemnity Co. v. Sogomonian, 198 Cal. App. 3d 169, 181 (1988).   A fact is material if, as alleged in this case, the insurer specifically sought the information in question.  Thompson v. Occidental Life Ins. Co., 9 Cal. 3d 904, 916 (1973) ("The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law.")

        Here, plaintiff alleges that it would not have issued the subject policy but for the representations on defendants' Application for the Policy.  Plaintiff has established that defendants failed to disclose material facts in the Application, including the Daniels lawsuit, in which Grivette was a named defendant, and the law enforcement investigation of Warren, thereby materially misrepresenting facts pertinent to plaintiff's decision to issue the Policy and Bond to defendants.  (See generally Kirk Decl.)  Plaintiff has also shown that Grivette's signature was forged on the Application and provided without his approval, thereby establishing an alternative basis for rescission of the Policy.  Therefore, based on the allegations of the complaint and the further evidence submitted in support of the instant motion, the undersigned finds that plaintiff is entitled to an order entering judgment in its favor against defendants.

---

[1] California Insurance Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."); and § 10380 ("The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery under the policy unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.").

Accordingly, the undersigned will recommend that the district court declare (1) defendants to have made misrepresentations and/or omissions of material fact pertinent to the Application; (2) that but for those misrepresentations and/or omissions of material fact, plaintiff would not have issued the Policy and Bond; and (3) the Policy and Bond rescinded and of no force or effect. As a result of the rescission, plaintiff is further entitled to a declaration that it has no duty to defend or indemnify defendant Triduanum or defendant Cavell under the Policy with respect to the Underlying Lawsuit, and as such, plaintiff may cease the funding of the defense on defendants' behalf in that action.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. No. 47) be granted;

2. The district court enter judgment (a) ordering that the policy of insurance issued by plaintiff to defendants is rescinded and void and (b) declaring that plaintiff has no duty to defend or indemnify defendants under the Policy with respect to the Underlying Lawsuit, and thus, plaintiff may cease funding defendants' defense in that action.

3. Plaintiff's request for award of costs be denied at this time.[2]

4. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be served

---

[2] Without citation to authority, plaintiff has requested in the conclusion section of its brief in support of the granting of default judgment, an award of its "costs of suit . . . by statute." However, because plaintiff has failed to provide the court with any legal basis for an award of costs or a description of the costs and the amount of costs requested, its request should be denied.

within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 29, 2011.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:10
Ddad1\orders.civil\LloydsLondon10.116.default.judg.f&rs